IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00205-FDW

| | | |
|---|---|---|
| JAMAL BULLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| DAVID MITCHELL, Superintendent, | ) | |
| Lanesboro Correctional; | ) | |
| KEN BEAVER, Assistant Superintendent; | ) | |
| DAVID AARON, Unit Manager;[1] | ) | |
| LARRY DUNSTON, Head of Security | ) | |
| Threat Group, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on consideration of Plaintiff's pro se complaint which

he filed pursuant to 42 U.S.C. § 1983.[2]

I.    BACKGROUND

---

[1] Plaintiff does not include David Aaron in the caption of his complaint but he does name him as a defendant when identifying the parties in the body of the complaint. Accordingly, the captioned will be ordered amended to include David Aaron.

[2] Plaintiff presents no allegations that directly involve defendants Mitchell and Beaver whom Plaintiff identifies as superintendents of the prison nor does he provide allegations that they had personal knowledge of alleged violations. Accordingly, even assuming Plaintiff's complaint was not subject to dismissal for the reasons discussed below, these defendants would be dismissed because Plaintiff's theory of liability depends on the doctrine of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n.58 (1978).

The Court further finds, notwithstanding the discussion below, that Defendant Dunston would be subject to dismissal because the only allegation against him appears to be in his capacity as Head of the Security Threat Group (STG) to which Plaintiff had been assigned. However, absent particular allegations of hardship stemming from this designation, which are not fairly alleged, Plaintiff has stated no cause of action in this § 1983 proceeding. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Finally, notwithstanding the Court's findings herein, it appears Defendant Aaron would be subject to dismissal because the lone allegation against him relates to one instance where Aaron explained the policy that mail being sent to or from the STG housing unit was subject to more rigorous inspection. This standing alone fails to state a claim.

Plaintiff is a prisoner of the State of North Carolina with a projected release date of September 4, 2032. In his complaint, Plaintiff contends that while he was housed at Lanesboro Correctional the defendants violated his civil rights by limiting his First Amendment right to the free exercise of religion by attempting to reclassify the Moorish Science Temple of America into a gang and by classifying prisoners as a "Security Threat Individual" if they are "attempting to operate within the 'Uniform Commercial Codes of Law.'" Plaintiff also complains that a book by Noble Drew Ali entitled The Exhuming of a Nation is being erroneously classified as contraband.

Plaintiff further complains that (1) he is being unjustly segregated; (2) denied the right to send and receive mail; (3) that his mail is being opened before it is mailed by prison authorities and before he receives it because he is classified as a member of the Security Threat Group; (4) exposed to substandard living conditions by only receiving 2 or 3 sets of clean clothing a week; (5) receives a cold meal at least once a day; and (6) only enjoys one hour of exercise, presumably per day. (Comp. 4-5). Finally, Plaintiff complains that his access to the courts is being impaired by authorities because of the tampering with his legal mail and the denial of access to legal materials.

## II.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(A)(a), "The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Following this initial review the "court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. § 1915A(b)(1). In conducting this review, the Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

## III.    DISCUSSION

Because Plaintiff was a prisoner at the time he filed his § 1983 complaint, he is bound by the mandatory requirements of the Prisoner Litigation Reform Act ("PLRA") which provides that a prisoner must exhaust his administrative remedies prior to the commencement of a civil action under § 1983. The PLRA provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life and the Court noted that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court went on to stress that the exhaustion requirement must be met before commencement of the suit. Id.

Whether an inmate has properly exhausted his administrative remedies is a matter to be determined by referencing the law of the state where the prisoner is housed and where the allegations supporting the complaint arose. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005). Indeed, failure to exhaust administrative remedies is an affirmative defense, but the Court is not prohibited from sua sponte examining the issue of exhaustion in reviewing the complaint. As the Fourth Circuit observed:

3

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Anderson, 407 F.3d at 683.

In North Carolina, state prisoners must complete a three-step administrative remedy procedure (the "ARP") in order to properly exhaust their administrative remedies. See N.C. Gen. Stat. §§ 148-118.1 to 148-118.9 (Article 11A: Corrections Administrative Remedy Procedure); Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008) (discussing the ARP).

Plaintiff admits in a verified statement that he did not exhaust his administrative remedies before filing his complaint. (Doc. No. 6 at 5). In his complaint, Plaintiff explains that he filed a grievance on March 24, 2014, in which he addressed the non-delivery of his mail by prison authorities, but the grievance was "denied/rejected." Plaintiff further explains that he did not resubmit the grievance because he is forced to hand his mail to prison employees who would then read the mail and possibly cause him to suffer retaliation. (Comp. 2-3).

Plaintiff is obviously aware of how the ARP operates as he filed a grievance on March 15, 2014, complaining that personal property had been lost after he submitted it to prison authorities for mailing. (Doc. No. 17 at 11) (Grievance No. 4865-14-0749). This grievance was accepted for review on March 17, and on May 14, 2014, in the Step One recommendation, the grievance examiner concluded that the grievance had been resolved; Plaintiff noted that he agreed with that response because the missing items had been located and mailed to his family. (Id. at 13).

The relevant inquiry regarding exhaustion is not driven by whether a prisoner is dissatisfied with the ARP, but whether the prisoner complied with the State's mandatory exhaustion requirements. See Jones, supra (noting prison's requirements control findings on

4

exhaustion). In the present case, plaintiff clearly did not follow the mandatory requirements of the prison's ARP. Moreover, Plaintiff provides proof of this fact through his filing of an excerpt from the APR manual maintained by the North Carolina Department of Public Safety (DPS) which provides, in relevant part that an "inmate may submit a new grievance once the initial grievance has completed Step 2 review or has been resolved." <u>See</u> Prisons: Policy & Procedure, Chapter H, § .0304(b).[3] (Doc No. 17 at 14).[4] In other words, Plaintiff was obligated to resolve his March 15 grievance before filing a second grievance.

In sum, Plaintiff had the statutory obligation to comply with the mandatory requirements of the PLRA which are in turn defined by DPS's Administrative Remedy Procedure. And there are no circumstances that could have enabled Plaintiff to circumvent § .0304(b) because there were no allegations that rose to the level of an emergency: substantial risk of physical injury, need for immediate medical attention, etc. <u>Id.</u> § 0308: EMERGENCY GRIEVANCES.

Finally, Plaintiff's motion to amend and enter supporting exhibits will be denied as futile because his complaint was not authorized prior to exhaustion and none of the proposed exhibits excuse his failure to exhaust.

## IV.     CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

**IT IS, THEREFORE, ORDERED** that Plaintiff' complaint is **DISMISSED**. (Doc. No. 1).

---

[3] This procedure manual may be accessed at the following address:
http://www.doc.state.nc.us/dop/policy_procedure_manual/index.htm
[4] As an example of the grievance procedure under the ARP, on April 12, 2014, Plaintiff filed a grievance that was rejected three days later because his March 14 grievance was still pending. (Doc. No. 6 at 3).

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend and enter supporting exhibits is **DENIED**. (Doc. No. 19).

**IT IS FURTHER ORDERED** that the caption in the ECF Docket shall be amended to include David Aaron as a defendant. <u>See</u>, <u>supra</u>, at n.1.

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: October 13, 2016

Frank D. Whitney
Chief United States District Judge